### JOHN CLAFLIN & another *vs.* SETH P. CARPENTER.

A contract for the sale of growing wood and timber, to be cut and removed by the purchaser, is not a contract for the sale of any interest in or concerning lands, &c. within the statute of frauds — Rev. Sts. c. 74, § 1.

A mortgage of growing wood and timber, made by one who has purchased the same, is a mortgage of personal property, to take effect, as such, when the wood and timber shall be severed from the freehold ; and it will avail the mortgagee, if it be duly recorded in the town clerk's office, although not recorded in the registry of deeds.

TROVER for timber. At the trial in the court of common pleas, the plaintiffs, to prove their title to the timber, gave in evidence a mortgage deed made to them on the 1st of September 1840, by one McDavit, conveying to them, among other things, all the wood and timber, cut and uncut, which he had formerly bought of them, to secure the payment of a certain sum on the 1st of January 1841. This deed was recorded in the office of the clerk of the town of Milford, on the day of its date, but was not recorded in the registry of deeds for the county of Worcester.

The plaintiffs also gave evidence tending to prove that on said 1st of September, they sold to said McDavit a quantity of wood and timber, then on their land, part of which was cut and lying on the land, and part uncut and standing : That said McDavit at the same time executed the mortgage deed aforesaid ; that he afterwards cut and disposed of said wood and timber, from time to time, and that a part of said timber, viz. 1450 feet thereof, which is the subject of this action, was sold by him to the defendant, on the 26th of July 1841 ; and that the plaintiffs, on that day, exhibited said mortgage deed to the defendant, and demanded said timber, which he refused to deliver to them.

It did not appear that the defendant, when he bought the

tımber of McDavit, had any notice of the existence of said mortgage deed, except that which may be implied by law from the fact that it was recorded as abovementioned. Nor did it appear whether the sale of the wood and timber by the plaintiffs to McDavit was oral, or by deed or other instrument in writing

The plaintiffs contended that the said mortgage deed included, as personal property, all the timber growing and cut ; or at least all that was cut before the 1st of January 1841, when the debt, which was secured by said mortgage, became payable ; and that if said deed did not include, as personal property, the timber which was standing when it was executed yet the property in said standing timber had never passed to McDavit by any legal conveyance made by them to him in writing ; and that they, being the owners of the land on which the timber was standing, continued to own said timber, and were entitled to recover damages of the defendant for the conversion thereof.

The court instructed the jury, that the timber which was uncut and standing on the plaintiffs' land, when said mortgage deed was made, was real estate, and that the record of said deed in the town clerk's office did not operate as a constructive notice thereof to the defendant ; and that it was therefore incumbent on the plaintiffs, in order to entitle themselves to a ver dict, to prove that the timber sued for had been cut and severed from the freehold, at the time when said mortgage deed was executed.

A verdict. was returned for the defendant, and the plaintiffs alleged exceptions to the aforesaid instructions.

*Washburn*, for the plaintiffs.

*C. Allen*, for the defendant.

WILDE, J. This case comes before us on exceptions to the ınstructions of the court of common pleas to the jury, as to the construction and legal effect of a mortgage deed from one McDavit, from which the plaintiffs claim title to the property sued for. By the report of the case, it appears that on the 1st of September 1840, the plaintiffs sold to the said McDavit a quantity of wood and timber then on their land, part of which was then cut and lying on their land, and part was uncut and

standing on the said land. And on the same day the said McDavit gave a mortgage deed to the plaintiffs of all said wood and timber, cut and uncut.

On these facts, the jury were instructed that the timber, which was uncut at the time of making said mortgage, was real estate, and that it was incumbent on the plaintiffs, in order to entitle them to a verdict, to prove that the timber sued for in this action had been cut and severed from the freehold, at the time when said mortgage was given. To these instructions the plaintiffs' counsel excepts, and he contends that the said mortgage was a contract for the sale of wood and timber, and not for the sale of lands, or any interest therein. That such a sale was intended by the contracting parties we cannot doubt ; and the question is, whether by the principles of law the intention of the parties can be effectuated.

In a leading case on this point, 1 Ld. Raym. 182, it was reported by Treby, C. J. to the other justices, that it was decided by him at *nisi prius*, that the sale of timber growing on land might be by parol, and was not by the statute of frauds required to be in writing ; and to the correctness of this decision Powell, J. agreed. This decision is cited as an authority in Bul. N. P. 282, and by Holroyd, J. in *Mayfield* v. *Wadsley* 3 Barn. & Cres. 364.

In *Scorell* v. *Boxall*, 1 Younge & Jerv. 399, Hullock, B. remarked, that he never before heard the dictum in Ld. Raym. 182, cited as an authority ; and the only claim which it had, in his opinion, to that distinction, was the allusion to it by Mr. Justice Holroyd, in *Mayfield* v. *Wadsley*. But this remark of the learned baron was not called for in the decision of that case, which depended on a different principle. The question there was, whether the plaintiff, who had purchased, by parol, the underwood then standing, to be cut by him, had such a possession as would enable him to maintain trespass against the defendants for cutting and carrying it away. And it was rightly decided that he had not. The parol contract in that case was an executory contract of sale, to be completed by the plaintiff's severing the underwood from the freehold. Until it was thus

severed, it remained the property of the owner of the soil. If the plaintiff had cut the underwood, and the defendants had taken it away, there can be no doubt, we think, that the action might have been well maintained.

A contract for the sale of standing wood or timber, to be cut and severed from the freehold by the vendee, does not convey to him any interest in the land, within the meaning of the 1st section of the statute of frauds, Rev. Sts. *c.* 74. Such a contract is to be construed as passing an interest in the trees, when they are severed from the freehold, and not any interest in the land. So it was decided in *Smith* v. *Surman,* 9 Barn. & Cres. 561 ; * in *Bostwick* v. *Leach,* 3 Day, 484 ; in *Ers kine* v. *Plummer,* 7 Greenl. 447 ; and in *Whitmarsh* v. *Walker,* 1 Met. 313. The same principle is laid down in many other cases referred to in Chit. Con. (5th Am. ed.) 300–302, and in Greenleaf on Ev. § 271, *&* note. A license to enter on the land of another, and do a particular act or a series of acts, may be valid, though not granted by deed or in writing. Such a license does not transfer any interest in the land, although when granted for a valuable consideration, and acted upon, it cannot be countermanded. *Tayler* v. *Waters,* 7 Taunt. 374. *Liggins* v. *Inge,* 7 Bing. 682. *Mumford* v. *Whitney,* 15 Wend. 380. *Whitmarsh* v. *Walker,* 1 Met. 313. *Woodbury* v. *Parshley,* 7 N. Hamp. 237.

We are therefore of opinion that the mortgage from McDavit to the plaintiffs was a mortgage of personal property, to take effect as such, when the wood and timber should be severed from the freehold. Such was manifestly the intention of the parties, and we think the contract is not void or voidable, as passing an interest in the land on which the trees were standing.

There is also another ground, on which we think this action may be maintained. If the mortgage from McDavit to the plaintiffs was void or voidable by the statute of frauds, so was the sale from the plaintiffs to him ; and McDavit obtained thereby no title to the land, and the trees were the property of the

* See Lord Abinger's remarks (9 Mees. & Welsb. 505) on the decision in this case of *Smith* v. *Surman.*

plaintiffs, both before and after they were severed from the freehold. So that, *utraque via*, the plaintiffs may maintain their action.

*New trial granted.*